# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JANICE K. GRIFFIN,               )
                                 )
           Plaintiff,            )
                                 )
v.                               )   Case No. CIV-14-222-KEW
                                 )
CAROLYN W. COLVIN, Acting        )
Commissioner of Social           )
Security Administration,         )
                                 )
           Defendant.            )

## OPINION AND ORDER

Plaintiff Janice K. Griffin (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 24, 1958 and was 55 years old at the time of the ALJ's latest decision. Claimant obtained her GED. Claimant has worked in the past as an inspector. Claimant alleges an inability to work beginning July 30, 2007 amended to February 14, 2009 due to limitations resulting from hepatitis C, a heart attack, arthritis in the knees, and asthma.

### Procedural History

On February 11, 2009, Claimant protectively filed for widow's disability insurance benefits under Title II (42 U.S.C. § 401, *et*

*seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After an administrative hearing, the Administrative Law Judge ("ALJ") assigned to the case entered an unfavorable ruling on August 2, 2010. The Appeals Council denied review and Claimant appealed to this Court. By Opinion and Order entered March 29, 2013, this Court reversed the decision and remanded the case for further proceedings.

On February 14, 2012, Claimant filed an additional Title II application and on February 8, 2012, Claimant filed a subsequent Title XVI application, both alleging an onset date of August 3, 2010. On January 9, 2014, ALJ Bernard Porter conducted a second administrative hearing by video with the ALJ presiding from McAlester, Oklahoma and Claimant appearing in Poteau, Oklahoma. The ALJ issued a second unfavorable decision on May 8, 2014. Claimant declined to seek review before the Appeals Council. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as a

4

general inspector.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to identify all of her severe impairments; (2) reaching an improper RFC determination; and (3) making erroneous findings at step four.

**Consideration of Step Two Severe Impairments**

In his decision, the ALJ found Claimant suffered from the severe impairments of coronary artery disease, asthma, chronic obstructive pulmonary disease, hepatitis C, gastroesophageal reflux disease, osteoarthritis of the back and knees, depressive disorder, anxiety disorder with panic disorder, and a history of substance abuse. (Tr. 355). The ALJ determined Claimant retained the RFC to perform light work. In so doing, the ALJ found Claimant was able to lift and carry 20 pounds occasionally and 10 pounds frequently. Claimant could stand and/or walk six hours in an eight hour workday and sit for six to eight hours in an eight hour workday. Claimant could occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds or crawl. Claimant must also avoid exposure to unprotected heights, moving mechanical parts, temperature extremes, humidity and wetness, dusts, fumes, gases, and odors. Due to psychologically based factors, Claimant could perform routine and repetitive tasks. She can have frequent interactions with supervisors, co-workers, and the public. Time off task would be

5

accommodated by normal workday breaks. (Tr. 361-62).

After consulting with a vocational expert, the ALJ determined that Claimant could perform her past relevant work as a general inspector. (Tr. 371). As a result, the ALJ determined Claimant was not under a disability from July 30, 2007 through the date of the decision. Id.

Claimant contends the ALJ did not failed to consider that she suffered from the additional severe impairments of neuropathy in her feet and pain going down her legs. Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient

6

to make a step-two [severity] showing." Flaherty v. Astrue, 515 F.3d 1067, 1070-71 (10th Cir. 2007) quoting Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988). This Court would first note that no treating physician has diagnosed Claimant with neuropathy which she now asserts the ALJ should have included as a severe impairment. Rather, Claimant seeks to have this Court presume that since certain medication was prescribed, she suffered from a particular condition. Such a conclusion would be improper and this Court declines to make such a medical determination without supporting evidence in the record.

**RFC Determination**

Claimant first contends the ALJ provided an inadequate

7

explanation for his assessment of mental functioning. Claimant's contention that the ALJ only discussed her mental impairments "in two tiny paragraphs" is belied by the fact that the ALJ discussed Claimant's mental health history, including her treatment by Dr. Srivedi Nagumalli. (Tr. 355-57). Claimant next takes issue with the fact the ALJ afforded "great weight" to the state agency psychologists who found Claimant's mental impairments were non-severe. The ALJ then concluded the mental conditions were severe after considering Claimant's subjective complaints. (Tr. 369). While the ALJ employed somewhat awkward wording in reaching his conclusions, he ultimately gave Claimant the benefit of the doubt in finding her mental impairments severe but nevertheless concluded that they posed no functional limitations warranting further accommodation in the RFC. (Tr. 369-70).

On April 13, 2009, Dr. Tom Shadid completed a Psychiatric Review Technique on Claimant. Dr. Shadid found Claimant suffered from affective disorders, personality disorder, and substance addiction disorders but that none of these conditions were severe. (Tr. 253). He also concluded that Claimant only suffered mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace with no episodes of decompensation. (Tr. 263). This assessment was affirmed by Dr. Burnard Pearce. (Tr. 275).

RFC, "residual functional capacity," is defined by the regulations as what the claimant can still do despite his or her limitations. Davidson v. Secretary of Health & Human Servs., 912 F.2d 1246, 1253 (10th Cir. 1990) (citing 20 C.F.R. § 404.1545(a)). The ALJ appropriately determined that, while Claimant's mental impairments were severe, they did not compromise Claimant's ability to engage in basic work activities.

Claimant also takes issue with the ALJ's statement that Claimant's medical examinations were "basically normal," contending this statement constituted a prohibited substitution of his lay opinion for medical evidence. The ALJ's statement represented a brief summary of the medical evidence as he interpreted it, not a diagnosis. No error is attributed to this statement.

Claimant next asserts the ALJ should have obtained a functional statement from a psychiatrist. Certainly, the regulations generally require that the adjudicators request medical source statements from acceptable medical sources with their reports. Soc. Sec. R. 96-5p. However, nothing in the regulations require the reversal and remand of a case because such statements were not obtained. Indeed, the regulations expressly state that "the absence of such a statement in a consultative examination report will not make the report incomplete." 20 C.F.R. § 416.919n(c)(6); see also 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6); Branam v.

Barnhart, 385 F.3d 1268, 1273 (10th Cir. 2004). Therefore, the failure of the ALJ to obtain a statement from Dr. Nagumalli does not constitute reversible error.

Claimant also contends the ALJ should have contacted Dr. Tracy Baker, Claimant's treating physician, because she did not document her neuropathy. It is not the ALJ's responsibility to create medical conditions and direct a physician to then document them to give them substance. No error is attributed to this alleged omission.

Claimant argues in this multi-part issue that her knee pain precludes the RFC finding reached by the ALJ. Dr. Jimmie Taylor found Claimant had a wide based, stable gait with no assistive device, despite Claimant's statement that she used a cane all the time. (Tr. 278). Claimant's treating physician, Dr. Baker, found on August 17, 2011 upon examination that Claimant "[a]ppeared to have (sic) abnormal gait in the exam room, slow but symmetric, but left the clinic with essentially normal, rapid gait." (Tr. 687). Moreover, Dr. Baker's Medical Source Statement dated November 26, 2011 supported the ALJ's RFC assessment. (Tr. 679-81). The ALJ's RFC findings are supported throughout the medical record.

Claimant then asserts a litany of medical conditions which she contends should adversely affect the ALJ's RFC assessment. None of these conditions have been determined by a medical professional to

cause Claimant more than a minimal limitation. The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. See e.g. Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition).

**Step Four Analysis**

Claimant contends the ALJ erred in finding she could return to her past relevant work as an inspector. In analyzing Claimant's ability to engage in his past work, the ALJ must assess three phases. In the first phase, the ALJ must first determine the claimant's RFC. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). While Claimant disagrees with the limitations contained in the RFC, the ALJ satisfied this element.

In the second phase, the ALJ must determine the demands of the

11

claimant's past relevant work. Id. In making this determination, the ALJ may rely upon the testimony of the vocational expert. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ inquired of the vocational expert utilizing a hypothetical question which encompassed Claimant's RFC. (Tr. 405-06). The expert testified that Claimant could perform the general inspector job under the hypothetical as generally performed but not as she performed it. (Tr. 406). The vocational expert also made alternative findings regarding other jobs which were available which Claimant could perform that existed in significant numbers in the economy. (Tr. 406-07). The second phase was adequately satisfied by the ALJ and vocational expert.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. Winfrey, 92 F.3d at 1023. The ALJ made the appropriate comparative analysis to satisfy this phase. (Tr. 371). This Court finds no error in the ALJ's step four analysis.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 28th day of September, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE